IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM ADAMS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LIFE INSURANCE COMPANY OF | : | |
| NORTH AMERICA, ET AL. | : | NO.  08-2683 |

## MEMORANDUM

**Padova, J.**                                                          **August 3, 2009**

William Adams brings this action against the Life Insurance Company of North America

("LINA") and the Trustees of Philadelphia Federation of Teachers a/k/a Philadelphia Federation of

Teachers ("PFT"), seeking long term disability benefits under a policy of insurance administered by

LINA for PFT.  Defendants have filed a Motion for Summary Judgment, seeking dismissal of

Plaintiff's claim.  For the reasons that follow, the Motion is denied.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was an apprentice teacher with the Philadelphia School District beginning on

September 24, 2001 at Bartram High School.  (Defs. Ex. A at 1.)  He worked for approximately 74

days before going on sick leave on March 1, 2002 as a result of a pre-existing back condition.[1]  (Id.)

He remained on sick leave for the remainder of the 2001-02 school year.  (Id.)  Plaintiff was

approved to return to full duty effective September 13, 2003, but remained absent without

authorization. (Id.)  After a hearing, he was directed to return to work as of January 2, 2003.  (Id.)

He returned to work at Bartram High School as directed, on January 2, 2003, as a co-teacher of

mathematics with another teacher.  (Id.)  On January 30, 2003, a student bumped into Plaintiff,

---

[1]Plaintiff suffered a back injury on September 7, 1999 when he was moving a wooden pallet
in the course of his employment as a store manager for Eckerd Drugs.  (Pl. Ex. B at 911, 982, 1266.)
He suffered a subsequent back injury in a car accident on April 2, 2000.  (Id. at 1250.)

knocking him off balance and aggravating a previous back injury.  (Def. Ex. D at 1; Workers' Comp. Decision at 4.)    Plaintiff did not return to work after this incident, but received Workers' Compensation benefits.  (Def. Ex. A at 1, Workers' Comp. Decision at 1.)  Plaintiff continued to receive Workers' Compensation benefits until February 8, 2006, when a Workers' Compensation Administrative Law Judge ("ALJ") granted the School District of Philadelphia's petition to terminate his benefits.  (Workers' Comp. Decision at 8.)  The Workers' Compensation ALJ found that Plaintiff had "fully recovered from his January 30, 2003 work injury effective June 11, 2003" and terminated his benefits effective June 11, 2003.  (Id.)

On September 6, 2001, before he began working as an apprentice teacher at Bartram High School, Plaintiff applied for Disability Insurance Benefits under the Social Security Act.  (8/13/03 Soc. Sec. Admin. Decision at 1.)  On August 13, 2003, a Social Security ALJ found that Plaintiff was able to "perform the demands of the full range of sedentary work" and denied Plaintiff's application for Disability Insurance Benefits because he was not disabled.  (Id. at 7-9.)  Plaintiff appealed this decision, which was vacated and remanded.  (3/15/06 Soc. Sec. Admin. Decision at 1.)  On remand, the ALJ found that Plaintiff's impairment, "degenerative disc disease of the lumbar spine," was severe and that he had been disabled since May 15, 2000. (Id. at 4-5.)  The ALJ further found that Plaintiff was entitled to Disability Insurance Benefits.  (Id. at 5.)

Plaintiff filed his claim for long term disability ("LTD") benefits with LINA on February 23, 2006.[2]  (Pl. Ex. B at 231.)  In his claim, Plaintiff stated that the January 30, 2003 incident aggravated a pre-existing injury.  (Id.)  He described his injury as "herniated lumbar disk, L3, L4 and bulging

_____

    [2]LINA chose to accept Plaintiff's late filed claim and to consider it on the merits.  (Defs. Ex. O.)

2

disks L2-3 and L4-5.  Herniation resulted from moving a wooden pallet while working for Eckerd

Drugs 9/7/99.  Out from school district 3/02 til 12/02, then out from school district 2/03 until

present." (Id.)

PFT's LTD policy no. LK-030510 (the "Policy") became effective on June 1, 2001 and

covered all active, permanent, full-time employees of PFT. (Policy at 1, 3.)  Pursuant to the Policy,

LINA will pay disability benefits to employees who become disabled as defined by the Policy while

covered by the Policy.  (Id. at 8.)  In order to be eligible for benefits, an employee must be

continuously disabled for 365 days.  (Id. at 4, 8.)  The Policy defines disability/disabled as follows:

> An Employee is Disabled if, because of Injury or Sickness,
>
> 1.  he or she is unable to perform all the material duties of his or
>     her regular occupation, or solely due to Injury or Sickness, he
>     or she is unable to earn more than 80% of his or her Indexed
>     Covered Earnings; and
>
> 2.  after Disability benefits have been payable for 24 months, he
>     or she is unable to perform all the material duties of any
>     occupation for which he or she may reasonably become
>     qualified based on education, training or experience, or solely
>     due to Injury or Sickness, he or she is unable to earn more
>     than 80% of his or her Indexed Covered Earnings.

(Id. at 4.)  The Policy excludes coverage for pre-existing conditions.  (Id. at 9.)

LINA denied Plaintiff's application for LTD benefits on May 17, 2006, based on the findings

of the Workers' Compensation ALJ who terminated Plaintiff's Workers' Compensation benefits.

(Defs. Ex. P.)  LINA specifically relied on the following findings of the Workers' Compensation

ALJ:

> 2.b.  "Dr. Meller examined Claimant on June 11, 2003.  Claimant
>     provided a history of an injury in 1999 while he was lifting items
>     [off] a pallet while working for Eckerd Drugs.  For this injury,

Claimant treated with a Workers' compensation facility at the Mercy Wellness Center with Dr. Malumed, Dr. Albert, Dr. Bridges, Dr. Friedman and Dr. Salkind.  An MRI showed a disc herniation at L3-4, and Claimant underwent epidural injections, one of which provided significant relief.  Claimant was out of work until September 2001, when he began working for Employer.   After one month, his symptoms worsened.  The complaints noted in these records prior to January 30, 2003 are essentially identical to the complaints noted after January 30, 2003.  The records of Dr. Salkind noted an April 2, 2000 motor vehicle accident after which claimant underwent a fourth epidural injection and began physical therapy and a medrol dosepack. Claimant failed to mention any motor vehicle accident to Dr. Meller. Surgery was being considered before January 30, 2003."

2.g.     "After examining Claimant, taking his history and reviewing the multiple medical records.  Dr. Meller concluded that the clinical examination was normal.  Claimant has degenerative disc disease that existed prior to January 30, 2003.  Claimant was fully recovered from his January 30, 2003 work injury.  He may return to his pre-injury employment without restriction.  Claimant needs no additional care for his January 30, 2003 work injury. . . .  Any symptoms Claimant has are related to the 1999 work injury and 2000 motor vehicle accident.   Claimant may perform medium duty work, and any restrictions on his vocational abilities are not related to the January 30, 2003 work injury."

(Id. at 1-2.)  LINA also relied on the Workers' Compensation ALJ's findings that Plaintiff's testimony about his symptoms was not credible and that Plaintiff had "fully recovered from his January 30, 2003 work injury effective June 11, 2003."  (Id. at 2 ¶¶ 6.c., 8, emphasis omitted.) Plaintiff appealed LINA's decision and asked that LINA consider the decision of the Social Security ALJ granting his application for Social Security Disability Benefits on appeal.  (Defs. Ex. Q.)

On December 4, 2006, LINA denied Plaintiff's appeal and affirmed the denial of his LTD claim.  (Defs. Ex. R.)  In its letter explaining its denial of benefits, LINA stated that Plaintiff's position as an apprentice teacher is classified by the Department of Labor as a light duty position. (Id. at 1-2.)  The letter characterized the reason Plaintiff stopped working on January 31, 2003 as

4

being due to "degenerative disc disease of his lumbar spine, neck, back and leg pain, tightness in both legs and increased muscle spasms secondary to a work related injury in 1999." (Id. at 2.)  The letter also stated that a medical director employed by LINA reviewed Plaintiff's "entire medical chart, concluding that the medical information only documents subjective complaints and provides no objective findings of a functional impairment to support restrictions to preclude Mr. Adams from his regular light demand level occupation." (Id. at 3.)  The letter further stated that Plaintiff was ineligible for LTD benefits because his medical records failed "to support a severity of impairment to preclude [him] from performing his regular occupation from January 31, 2003 through January 30, 2004, and to present." (Id.)

LINA later sought an Independent Peer Review of Plaintiff's file, which was completed by Dr. Renat Sukhov, who is Board Certified in Physical Medicine and Rehabilitation. (Defs. Ex. S at 2.)  On August 17, 2007, after Dr. Sukhov's review, LINA again denied Plaintiff's claim for LTD. (Defs. Ex. S.)  LINA's August 17, 2007 letter denying Plaintiff's claim summarizes Dr. Sukhov's conclusions as follows:

> Dr. Sukhov reviewed the medical documentation on file in [its] entirety and advised there is a multitude of medical evidence that supports Mr. Adams [sic] ability to perform at the light functional capacity level for the time period of January 31, 2003 through January 30, 2004 and through the present time.  He noted this is consistent with provisions for avoiding excessive lifting [of] more than twenty pounds frequently and pushing and pulling heavy loads above thirty to thirty-five pounds frequently.
>
> In summary, a review of the medical information provided did not reveal a severity of Mr. Adams [sic] condition resulting in restrictions preventing light work activities throughout the Benefit Waiting Period.  In addition, the restrictions outlined by Dr. Sukhov do not prevent light physical demand activities.  Although Mr. Adams has a history of spinal problems, the documentation does not support a

> severity of his condition during the Benefit Waiting Period preventing
> him from performing his occupation as a Teacher.  Therefore, we
> must affirm our previous decision to deny benefits.

(Id. at 2.)

Plaintiff subsequently filed the instant lawsuit in the Court of Common Pleas of Philadelphia County, alleging that Defendants improperly denied his claim for LTD benefits.  Defendants properly removed the action to this Court on the basis that it is covered by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  After the moving party has met its initial burden, the adverse party's response "must -- by affidavits or otherwise as provided in this rule -- set out specific facts showing a genuine issue for trial."  Fed. R.

Civ. P. 56(e)(2).  That is, summary judgment is appropriate if the non-moving party fails to rebut by

making a factual showing "sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of

material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citations

omitted).  Indeed, evidence introduced to defeat or support a motion for summary judgment must

be capable of being admissible at trial.  See Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95

(3d Cir. 1999); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234

n.9 (3d Cir. 1993).

## III.   DISCUSSION

### A.    ERISA Standard of Review

ERISA provides that a plan participant may bring a civil action "to recover benefits due to

him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his

rights to future benefits under the terms of the plan . . . ."  29 U.S.C. § 1132(a)(1)(B).  When we

evaluate a challenge to a denial of benefits in an action brought under § 1132(a)(1)(B), we utilize "a

de novo standard of review, unless the plan grants discretionary authority to the administrator or

fiduciary to determine eligibility for benefits or interpret the terms of the plan." Schwing v. The

Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009) (citing Firestone Tire & Rubber Co. v. Bruch,

489 U.S. 101 (1989)).  "'*De novo* means here, *as it ordinarily does*, [that] . . . the court's inquiry is

not limited to or constricted by the . . . record, nor is any deference due the . . . conclusion [under

review].'" Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1184 (3d Cir.

1991) (quoting Doe v. United States, 821 F.2d 694, 697 (D.C. Cir. 1987)).  A district court

7

conducting a *de novo* review may, but is not required to, conduct an evidentiary hearing or hold a trial: "[i]f the record on review is sufficiently developed, the district court may, in its discretion, merely conduct a *de novo* review of the record of the administrator's decision, making its own independent benefit determination." Id. at 1185 (footnote omitted) (citing McMahan v. New England Mut. Life Ins. Co., 888 F.2d 426, 431 (6th Cir. 1989)).

Conversely, "[w]here . . . an insurance policy vests discretion in an insurance company with a dual status as administrator and payer of benefits, the Court must review the determination under an arbitrary and capricious standard." Hoch v. Hartford Life & Accident Ins. Co., Civ. A. No. 08-4805, 2009 WL 1162823, at *10 (E.D. Pa. Apr. 29, 2009) (citing Firestone, 489 U.S. at 111-12). "The 'arbitrary and capricious' standard is essentially the same as the 'abuse of discretion' standard." Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 n.4 (3d Cir. 1993) (citations omitted). "Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Id. (footnote omitted) (quoting Adamo v. Anchor Hocking Corp., 720 F. Supp. 491, 500 (W.D. Pa. 1989) and citing Miller v. Metro. Life Ins. Co., 925 F.2d 979, 984 (6th Cir. 1991)). LINA contends that the Policy grants it the discretion to determine eligibility for long term disability benefits and, consequently, that the arbitrary and capricious standard applies in this case.

"Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan." Luby, 944 F.2d at 1180; see also Post v. KidsPeace Corp., 98 Fed. App'x 116, 120 (3d Cir. 2004) ("To determine the proper standard of review, we begin with the language of the plan." (citing Luby, 944 F.2d at 1180)). We construe the terms of the Policy

"without deferring to either party's interpretation." Luby, 944 F.2d at 1180 (citing Firestone, 489

U.S. at 112). "There are no 'magic words' that grant discretion to the administrator -- discretion may

be granted implicitly or explicitly -- however, when a plan is ambiguous, its terms are construed in

favor of the insured." McKinnis v. Hartford Life, Civ. A. No. 02-3512, 2009 WL 1444429, at *3

(E.D. Pa. May 22, 2009) (citing Farina v. Temple Univ. Health Sys. Long Term Disability Plan, Civ.

A. No. 08-2473, 2009 WL 1172705, at *10 (E.D. Pa. Apr. 28, 2009) and Heasley v. Belden & Blake

Corp., 2 F.3d 1249, 1258 (3d Cir. 1993)).

LINA maintains that the following Policy language gives it the discretion to determine

eligibility for benefits:

> Satisfactory proof of Disability must be provided to the Insurance
> Company, at the Employee's expense, before benefits will be paid.
>
> The Insurance Company will require continued proof of the
> Employee's Disability for benefits to continue.

(Policy at 8.) It is unclear whether "a plan that requires an insured to submit 'satisfactory proof' to

the claim administrator confers sufficient discretion upon the administrator to warrant arbitrary and

capricious review . . . in the Third Circuit." Farina, 2009 WL 1172705, at *10.[3] "Although other

circuits are split on the issue, the weight of recent authority indicates that a plan term requiring a

claimant to support his claim with satisfactory proof, absent more, fails to confer discretion upon an

---

[3]In Russell v. Paul Revere Life Insurance Co., 288 F.3d 78 (3d Cir. 2002), the United States
Court of Appeals for the Third Circuit was asked to determine whether a requirement that the insured
provide "satisfactory proof" of disability granted the insurance company discretion to determine
eligibility. The Third Circuit did not directly address this issue, but affirmed the decision of the
District of Delaware applying the arbitrary and capricious standard in that case because Russell had
"conceded in his amended complaint that the Company was a fiduciary under both policies 'with
discretionary authority to determine the eligibility of [sic] benefits.'" Id. at 82. In this case, Plaintiff
has made no such concession and, accordingly, Russell is not controlling here. Accord Farina, 2009
WL 1172705, at *12 n.11.

administrator."  Id.

The United States Courts of Appeals for the First, Second, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have all considered this issue.  The First, Second, Fourth, Seventh, Eighth, Ninth and Tenth Circuits agree that a requirement that the claimant submit "satisfactory proof" of disability does not confer discretionary authority upon the administrator.[4]  As the Tenth Circuit has explained:

> Most circuits that have considered the issue have concluded that the mere requirement to submit satisfactory or adequate proof of eligibility does not confer discretion upon an administrator.  To say that proof must be "satisfactory" may be to say only that it must meet some objective standard-what a reasonable person would find to be satisfactory.  Construing any ambiguity in plan language in favor of the beneficiary, courts are likely to interpret the term "satisfactory" as conveying such an objective standard, without granting any deference to the factual determinations of the plan administrator.

Nance v. Sun Life Assurance Co. of Can., 294 F.3d 1263, 1267 (10th Cir. 2002) (citations omitted).

The Sixth and Eleventh Circuits, on the other hand, both hold that a requirement that the plan

---

[4]The First, Second, Fourth, Seventh, Eighth, Ninth, and Tenth Circuits have all concluded that policy provisions that "simply require 'satisfactory proof' of disability" do not confer discretion on the insurance company.  Brigham v. Sun Life of Can., 317 F.3d 72, 81 (1st Cir. 2003) (citations omitted).  See also Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251-52 (2d Cir.1999); Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 269-70 (4th Cir. 2002); Diaz v. Prudential Ins. Co. of Am., 424 F.3d 635, 637 (7th Cir. 2005) (stating that "a plan's requirement that an applicant submit 'satisfactory proof of entitlement' does not necessarily mean that a plan administrator has discretion, because every plan requires submission of documentary proof, and the administrator is entitled to insist on something like a doctor's note rather than one's latest telephone bill" (citing Herzberger v. Standard Ins. Co., 205 F.3d 327, 330 (7th Cir. 2000) and Perugini-Christen v. Homestead Mortgage Co., 287 F.3d 624, 626-27 (7th Cir. 2002))); Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839 (8th Cir. 2001) (citations omitted); Thomas v. Oregon Fruit Prods. Co., 228 F.3d 991, 994 (9th Cir. 2000) (explaining that the requirement that a plan participant provide "satisfactory written proof" of disability, without more, is ambiguous and, accordingly, does not confer discretion on the insurance company (citing Kearny v. Standard Ins., 175 F.3d 1084, 1089-90 (9th Cir. 1999))); Ray v. Unum Life Ins. Co. of Am., 314 F.3d 482, 486 (10th Cir. 2002).

participant submit "satisfactory proof" of disability to the insurance company confers discretionary authority on the insurance company.  See Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996) (stating that "[a] determination that evidence is satisfactory is a subjective judgment that requires a plan administrator to exercise his discretion"); Tippet v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1233-34 (11th Cir. 2006) (concluding that a requirement that a plan participant submit "satisfactory proof of Total Disability to [the insurer]" was sufficient to confer discretionary authority on the insurance company to determine eligibility for benefits (citing Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1324-25 (11th Cir. 2001))).

We believe that the First, Second, Fourth, Seventh, Eighth, Ninth, and Tenth Circuits have properly determined that requiring a plan participant to submit "satisfactory proof" of disability to his or her insurance company does not unambiguously convey discretionary authority to that insurance company.  Consequently, we hold that the Policy's requirement that "[s]atisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefit will be paid" does not convey to LINA discretionary authority to determine whether Plaintiff is disabled, and we will apply the *de novo* standard.[5]

---

[5]Our holding is consistent with that of Judge Schiller of this District, who recently analyzed whether this specific plan language conferred discretion on LINA to determine eligibility for LTD benefits.  See Farina, 2009 WL 1172705, at *8-13.  LINA argued that the insurance policy in that case granted it the discretion to determine eligibility for benefits, relying on policy language **identical** to the language of the Policy in this case: "'Satisfactory proof of Disability must be provided to the Insurance Company, at the Employee's expense, before benefits will be paid. The Insurance Company will require continued proof of the Employee's Disability for benefits to continue.'"  Id. at *10.  Judge Schiller concluded that this language does not grant LINA the discretion to determine eligibility for benefits, and reviewed LINA's denial of Farina's claim for LTD benefits *de novo*.  Id. at *13 (citations omitted).  We note that counsel of record for LINA in this case, was also counsel of record for LINA in Farina.  As such, he received a copy of Judge Schiller's opinion in Farina and  was obligated, by Rule of Professional Conduct 3.3(a)(2), (c), to notify us of that decision.  He did not.

B.      LINA's Reasons for Denying Plaintiff's LTD Claim

LINA claims that it is entitled to summary judgment on Plaintiff's claim for LTD benefits under the Policy because it properly denied Plaintiff's claim.[6]  Defendants argue that Plaintiff is not entitled to LTD benefits under the Policy for the following reasons:  1) he was not disabled as a result of a covered injury or illness; 2) he did not satisfy the Policy's waiting period; 3) he failed to submit satisfactory proof that he was unable to perform the material duties of his occupation; and 4) his disability resulted from a pre-existing condition.  We examine each of these arguments in turn.

1.      Covered injury or illness

Defendants argue that they are entitled to the entry of summary judgment in their favor because Plaintiff's disability is not covered by the Policy.  According to the Policy, an Employee is "Disabled if, because of Injury or Sickness . . . he or she is unable to perform all the material duties of his or her regular occupation . . . ."  (Policy at 4.)  The Policy defines Injury as "[a]ny accidental loss or bodily harm which results directly and independently of all other causes from an Accident."  (Id. at 19.)   The Policy defines Sickness as "[a]ny physical or mental illness."   (Id. at 20.)  Defendants argue that Plaintiff was not disabled due to an Injury or Sickness because, as Plaintiff has conceded, his disability resulted from an intentional assault, not an accident.  Defendants rely on Plaintiff's Proof of Loss form, which Plaintiff signed on March 26, 2006, and which describes the cause of Plaintiff's injury as "assault from student."  (Defs. Ex. D.)

Plaintiff maintains that his claim cannot be denied on this basis, because the Summary Plan Description ("SPD") for the PFT's LTD Plan does not define "Disability" and, therefore, does not

_____

[6]LINA also argues that it properly exercised its discretion under the Policy. Since we have already determined that the Policy did not grant LINA discretion to determine disability, we need not analyze LINA's arguments with respect to its exercise of discretion.

notify plan participants that covered disabilities must result from accidents or sickness.  Plaintiff

contends that the SPD thus conflicts with the Policy as to the definition of Disability and the LTD

Plan must, therefore, cover disabilities arising from any cause except for those causes specifically

excluded in the SPD.  Plaintiff is, however, attempting to create a conflict where none exists.

It is true that, "where a summary plan description conflicts with the plan language, it is the

summary plan description that will control."  Burstein v. Ret. Account Plan for Employees of

Allegheny Health Educ. & Research Found., 334 F.3d 365, 378 (3d Cir. 2003).  However, "the mere

absence of terms in the SPD does not necessarily create a conflict. To equate silence with conflict

would reduce any . . . plan to the specific terms contained in the summary plan description -- an

absurd result since by its own definition the summary plan description is meant to summarize, not

recite, the detailed . . . plan." Nash v. Mercedes Benz USA, 489 F. Supp. 2d 411, 416 (D.N.J. 2007)

(citations omitted).  Consequently, the mere absence of a definition for the word "disability" in the

SPD is not equivalent to the creation of a conflict between the SPD and the Policy, the more detailed

document that contains the definitions of terms used to describe the Plan.  As there is no conflict

between the SPD and the Policy as to this matter, we turn to the definition of "Injury" contained in

the Policy and consider whether the cause of Plaintiff's injury could fall within that definition.

As mentioned above, the Policy defines Injury as "[a]ny accidental loss or bodily harm which

results directly and independently of all other causes from an Accident."[7]  (Id. 19.)  The Policy does

not define "Accident" and does not specifically exclude disabilities resulting from assaults.  (See

Policy at 13-14.)  Consequently, we find that the Policy's definition of "Injury" is ambiguous and

_____

[7]The Policy does not specifically exclude disabilities resulting from assaults (see Policy at
13-14), consequently,  a disability resulting from an assault is only excluded if the actions which
caused the disability do not fall within the definition of an "accident."

13

this term must be construed in favor of the Plaintiff.  See McKinnis, 2009 WL 1444429, at *3.

Black's Law Dictionary defines "accident" as "[a]n unintended and unforeseen injurious occurrence;

something that does not occur in the usual course of events or that could not be reasonably

anticipated."  Black's Law Dictionary 15 (7th ed. 1999).

Plaintiff's Proof of Loss form contains no information that would allow us to discern what

happened on January 30, 2003.  However, the record before us contains two descriptions of the

events leading to Plaintiff's January 30, 2003 injury.  First, on August 16, 2004, Plaintiff testified

as to the cause of his injury in his Workers' Compensation proceeding, which the Workers'

Compensation ALJ summarized as follows:

> On January 30, 2003, Claimant was conducting a classroom himself
> because the main teacher had taken the day off.  He was having a
> student escorted out of the classroom for being disruptive, when the
> student walked into Claimant, knocking him off balance.  Claimant
> pushed the student with his left hand, and the student stumbled and
> walked back toward him.

(Workers' Comp. Decision at 4.)  Second, an Incident Follow-Up Report prepared by Bartram High

School Police Officer Darius Parker states that Plaintiff called for assistance with removing a student

who was acting disruptively inside the classroom.  (Pl. Ex. B at 496.)   The student exited the

classroom and then reentered, "bumping the teacher forcefully and making physical threats."  (Id.)

Viewing the record in the light most favorable to Plaintiff, and construing the Policy's use of the

word "accident" in Plaintiff's favor, we find that the student's actions (walking into Plaintiff,

bumping him, knocking him off balance, and stumbling) could be characterized as "unintended and

unforeseen[,]" not occurring "in the usual course of events[,]" and of the type that Plaintiff would

not reasonably anticipate.  Consequently, we find that there is evidence showing that Plaintiff's

14

January 30, 2003 injury was accidental and, therefore, covered by the LTD Plan and we conclude that there is a genuine issue of material fact regarding whether Plaintiff's disability was caused by an "Injury" as that term is defined by the Policy. Defendants' Motion for Summary Judgment is, accordingly, denied as to their argument that Plaintiff was not disabled as a result of a covered Injury or Illness.

        2.    <u>Covered waiting period</u>

Defendants also argue that they are entitled to the entry of summary judgment in their favor because Plaintiff has not satisfied a condition precedent to entitlement to benefits. The Policy includes a Benefit Waiting Period of 365 days, meaning that "an Employee must be continuously Disabled" for 365 days "before Disability Benefits may be payable." (Policy at 4, 8.) Defendants maintain that Plaintiff has not satisfied this condition because he was not continuously disabled for 365 days following his January 30, 2003 injury. Defendants rely on the finding of the Workers' Compensation ALJ that Plaintiff had fully recovered from the January 30, 2003 injury by June 11, 2003. (Workers' Comp. Decision at 8.) Defendants further rely on the evaluations prepared by one of Plaintiff's treating physicians, Dr. Michael E. Frey, who cleared Plaintiff for light duty work in both April and July 2003. (Defs. Ex. F, G.)

The Workers' Compensation ALJ based her determination that Plaintiff had "fully recovered from his January 30, 2003 work injury effective June 11, 2003" primarily on the deposition of Dr. Menachem M. Meller, an orthopedic surgeon who examined Plaintiff on January 11, 2003. (Workers' Comp. Decision at 1-3, 6-7, 8.) The Workers' Compensation ALJ summarized Dr. Meller's testimony, in relevant part, as follows:

        After examining Claimant, taking his history and reviewing the

multiple medical records, Dr. Meller concluded that the clinical examination was normal.  Claimant has degenerative disc disease that existed prior to January 30, 2003.  Claimant was fully recovered from his January 30, 2003 work injury.  He may return to his pre-injury employment without restriction.  Claimant needs no additional care for his January 30, 2003 work injury. . . .   Any symptoms Claimant has are related to the 1999 work injury and 2000 motor vehicle accident.   Claimant may perform medium duty work and any restrictions on his vocational abilities are not related to the January 30, 2003 work injury.

(Id. at 3.)  Dr. Meller's deposition has not been made a part of the record of this Motion, and we are thus unable to review it and draw our own conclusions from it.

Plaintiff's job as a high school teacher was classified as light duty.  (Defs. Ex. C.)  Dr. Frey examined Plaintiff at the University of Pennsylvania Health System Spine Center on April 29, 2003.  (Defs. Ex. F.)  He found that Plaintiff was capable of only light duty work.  (Id.)  Dr. Frey examined Plaintiff again on July 22, 2003.  (Defs. Ex. G.)  He recommended that Plaintiff go on light duty work.  (Id.)  We find that this evidence supports  Defendants' argument that Plaintiff was capable of performing his job, which was classified as light duty, within 365 days of his January 30, 2003 injury.

Nevertheless, the record also contains evidence that Plaintiff was unable to perform all of the physical requirements of his job for the 365 days following his January 30, 2003 injury.  Plaintiff's job as a high school teacher includes the following physical requirements:  "Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly.  Can include walking and or standing frequently even though weight is negligible.  Can include pushing and or pulling of arm and or leg controls." (Defs. Ex. C.)  The record before us contains evidence that Plaintiff's treating physicians, including Dr. Frey, considered him to be unable to

satisfy the lifting, carrying, and standing requirements of his job, and otherwise physically unable to perform his job, during the year  following his injury.  There is also medical evidence on the record of this Motion that supports those opinions.

Dr. Frey prepared a progress report for Plaintiff on April 18, 2003 stating that Plaintiff complained of severe lumbosacral junction pain, that his pain was exacerbated by sitting or standing for more than one hour, and that Plaintiff should remain off work.  (Pl. Ex. B at 46.)  Dr. Frey wrote a note for Plaintiff on April 18, 2003, stating that he was unable to sit for more than one hour and should not return to work due to back pain.  (Id. at 1147.)  On May 20, 2003, Dr. Frey reevaluated Plaintiff based on a new MRI.  (Id. at 44.)  The MRI, dated May 10, 2003, demonstrated "spondylitic changes of the lumbar spine" as well as "disc desiccation at L3-4 with 0-25% loss of disc height at L3-4."  (Id.)  Dr. Frey diagnosed Plaintiff with "lumbar discogenic pain with somatic referral[,]" as well as "internal disc disruption syndrome with a positive concordant discography at L3-4."  (Id.) Dr. Frey wrote another note for Plaintiff on May 20, 2003, stating that Plaintiff needed additional tests and "should be off work until further notice."  (Id. at 1142.)  Dr. Frey evaluated Plaintiff again on September 29, 2003 and diagnosed him with "internal disc disruption syndrome with somatic referral" and with "soft tissue tightness and deconditioning."  (Id. at 29.)

Plaintiff was also treated by Dr. Curtis Slipman, Director of the Penn Spine Center.  On June 9, 2003, Dr. Slipman prepared a report on a lumbar discogram performed on Plaintiff on June 5, 2003.  (Id. at 36, 43.)  The discogram revealed that Plaintiff had a ruptured disc at L4-5 that "produced discordant bilateral low back pain that was higher than his normal low back pain."  (Id.) This was a new finding, as a previous discogram on September 18, 2002, was concordant at L3-4 and discordant at L5-S1.  (Id. at 36.)  Plaintiff subsequently had a 5-level lumbar discography on

17

September 3, 2003.  (Id. at 27.)  According to Dr. Slipman, the September 3, 2003 discography revealed that Plaintiff had a lobular disc at T12-L1, a lobular disc at L1-2, a fissured disc that produced low back pain at L2-3, and a ruptured disc which produced bilateral lumbosacral junction pain at L3-4.  (Id.)  On November 18, 2003, Dr. Slipman completed a "Statement of Claimant's Ability to Perform Work-Related Physical Activities" for Plaintiff that stated that Plaintiff could stand and walk for two to less than six hours, could never stoop, kneel, crouch, or crawl, could never move machinery, and could never lift 20 pounds or more.  (Id. at 1234-35.)

Plaintiff was also treated by Dr. William Murphy at S.M.A.R.T. Rehabilitation.  Dr. Murphy examined Plaintiff on September 11, 2003.  (Id. at 23-25.)  Plaintiff complained of "low back pain with radiating pain into both lower extremities . . . [and] a sensation of stiffness in his lumbar area." (Id. at 23.)  Plaintiff's pain was exacerbated by prolonged standing or attempting to bend, lift, climb, push, pull or carry.  (Id.)  Dr. Murphy concluded that the January 30, 2003 incident aggravated Plaintiff's "pre-existing lumbar disc disease with clinical evidence of lumbar radiculopathy" and noted that he continued to be symptomatic.  (Id. at 24.)  Dr. Murphy recommended that Plaintiff avoid repetitive bending at the waist, repetitive stooping, kneeling, crawling or climbing, prolonged sitting (greater than 30 minutes) or standing longer than 15 minutes.  (Id.)  Dr. Murphy also reached the opinion that Plaintiff remained "disabled from all employment" and that he had a poor prognosis for recovery.  (Id. at 25.)  Dr. Murphy saw Plaintiff again on October 2, 2003 and October 15, 2003. (Id. at 14, 20.)  On October 15, 2003, Dr. Murphy conducted nerve conduction studies of both of Plaintiff's lower extremities and a monopolar needle electromyography examination of Plaintiff's lumbar spine and lower extremities. (Id. at 14.)  Dr. Murphy found "left L4-5 radiculopathy, right L4-5 nerve root irritation, moderate subacute to chronic." (Id.)  Dr. Murphy further found, after both

18

visits, that Plaintiff remained disabled from his previous employment.  (Id. at 14, 20.)  Plaintiff underwent intradiscal electrothermal annulplasty ("IDET") procedures on October 23 and November 14, 2003.  (Id. at 9, 22.)  Neither procedure provided much relief of his pain.  (Id. at 6, 8.)  Dr. Murphy consistently found that Plaintiff was totally disabled from all employment after examining Plaintiff on November 13, 2003, December 18, 2003, and January 22, 2004.  (Id. at 6, 8, 1078.)

Plaintiff was evaluated by Dr. Philip Tasca of the Spine Center on December 12, 2003.  Dr. Tasca reported that Plaintiff's pain had decreased after his second IDET procedure, as long as he wore a brace, but that he still had pain in his midline low back, his entire left thigh, and his bilateral posterior calves.  (Id. at 3.)  Plaintiff's pain was exacerbated if he stood for more than 5 minutes or sat for more than 20 minutes.  (Id.)  On January 22, 2004, Plaintiff was reevaluated by Dr. Tasca, who reported that Plaintiff had stopped wearing his brace and that his pain had increased.  (Id. at 1.)  Dr. Tasca stated that Plaintiff had pain in his "bilateral low back, bilateral buttocks, right anterolateral and posterior foreleg, as well as his left lateral thigh and left foot."  (Id.)  Plaintiff also had numbness in his toes.  (Id.)

As discussed above, we find that there is evidence on the record of this Motion that Dr. Frey considered Plaintiff to be capable of light duty work in the spring and summer of 2003.  There is also evidence that Plaintiff's other treating physicians believed that he was totally disabled from his job as a high school teacher at Bartram High School for the 365 day period following his January 30, 2003 injury.  The documentation of Plaintiff's treatments, test results, and reported symptoms support those findings.  We conclude that there is a genuine issue of material fact regarding whether Plaintiff satisfied the Policy's Benefit Waiting Period of 365 days.  Defendants' Motion for Summary Judgment is, accordingly, denied as to their argument that Plaintiff failed to establish that

19

he was continuously disabled for 365 days following his January 30, 2003 injury.

        3.    <u>Plaintiff's ability to perform the material duties of his occupation</u>

      Defendants also argue that they are entitled to the entry of summary judgment in their favor because Plaintiff has not established that he is unable to perform the material duties of his job.  The Policy requires a Plan participant to provide "satisfactory proof" that he or she is unable to "perform all the material duties of his or her regular occupation" due to Injury or Sickness in order to receive LTD benefits.  (Policy at 4, 8.)  Defendants argue that the evidence on the record of this Motion establishes that Plaintiff was able to perform the physical tasks required by his position as a high school teacher, which include:  "Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly . . . walking and or standing frequently . . . pushing and or pulling of arm and or leg controls."  (Defs. Ex. C.)

      Defendants rely on Dr. Murphy's testimony in connection with Plaintiff's Workers' Compensation proceeding as supporting its contention that Plaintiff could perform these duties.  In that proceeding, Dr. Murphy was asked to compare discograms performed in September 2002 and September 2003.  (Murphy Dep. at 15-16.)  Dr. Murphy reported that both studies found "abnormalities at the lumbar disc L3-4 and L4-5 identifying a tear in the disc material known as radial tears and those are considered disc disruptions."  (<u>Id.</u> at 16.)  Dr. Murphy reported that there was no "significant interval change" between the two discograms.  (<u>Id.</u>)  We find that this testimony does not support Defendants' argument that Plaintiff could perform the physical requirements of his job after January 30, 2003.

      Defendants also rely on an independent medical review of Plaintiff's medical records performed by Dr. Sukhov at LINA's request on August 8, 2007.  Dr. Sukhov summarized Plaintiff's

medical records as reflecting:

> medical advice from the group of academic interventional physiatrists on the potential functional abilities of this claimant to sustain light duty level work with restrictions to not to [sic] lift more than 20 lbs of weight.   Hence, reasonable restrictions and limitations for the claimant's diagnosis of chronic low back pain would include provisions for avoiding excessive lifting for [sic] more than 20 lbs frequently and pushing and pulling heavy loads above 30-35 lbs frequently. Static work posture, particular [sic] sitting behind a wheel or at a desk, may also be considered to be a risk factor.

(Defs. Ex. N at 5.)   Dr. Sukhov concluded that "there is a multitude of medical evidence that supports the claimant's ability to perform at the light functional capacity level for the time period of 01/31/03 - 01/31/04 and through the present time.  This would be consistent with provisions for avoiding excessive lifting for [sic] more than 20 lbs frequently and pushing and pulling heavy loads above 30-35 lbs frequently."  (Id. at 5-6.)  We find that Dr. Sukhov's review of Plaintiffs' medical records does provide support for Defendants' argument.

However, there is also evidence on the record before us that was submitted to LINA that supports Plaintiff's position that he could not satisfy the physical requirements of the job of high school teacher.  The Social Security ALJ concluded from her review of Plaintiff's medical files that he could not perform his past relevant work as a result of the following functional limitations:

> He could walk less than one block without rest.  He could sit for 10-15 minutes and stand for 5-10 minutes.  In an 8-hour work day, he could sit about 4 hours and stand less than 2 hours.  He needs periods of walking around.  He must get up to walk 4-5 times during the day and walk for 1-5 minutes.  He must be able to shift positions *at will* from sitting, standing or walking.  The claimant would need to take unscheduled breaks during an 8-hour workday. This would occur 1-2 times a day, and he would need to rest for 5-10 minutes.   The claimant requires the use of a cane for occasional standing/walking. He can occasionally lift/carry 10 pounds.   The claimant has significant limitations in doing repetitive reaching.  He can use his

> hands 75% of the day for grasping, turning, and twisting objects. He can use his fingers for fine manipulation 100% of the day. The claimant cannot do any overhead reaching with his arms. He can bend and/or twist at the waist 10% of the day. . . .

(3/15/06 Soc. Sec. Admin. Decision at 3.)  The evaluations performed by Plaintiff's treating physicians also support his claim that he cannot perform the physical requirements of the job of high school teacher.  Dr. Slipman found in November 2003 that Plaintiff could stand and walk for two to less than six hours, could never stoop, kneel, crouch, or crawl, could never move machinery, and could never lift 20 pounds or more.  (Id. at 1234-35.)  Dr. Murphy determined in September 2003 that Plaintiff should not stand for longer than 15 minutes (id. at 24), and Dr. Tasca concluded in December 2003 that Plaintiff could not stand for longer than five minutes without exacerbating his pain.  (Id. at 3.)  In December 2005, Dr. Murphy found that Plaintiff could lift and carry less than ten pounds occasionally, and could never lift and carry more than ten pounds.  (Id. at 1052.)  Dr. Slipman and Dr. Murphy both prepared physical capacity questionnaires for Plaintiff in April 2006. (Id. at 1380-84.)  Dr. Slipman found that Plaintiff was able to stand and walk occasionally (less than 2.5 hours a day), lift an object of up to 10 pounds frequently, and carry an object of up to 10 pounds occasionally.  (Id. at 1380.)  Dr. Murphy found that Plaintiff could sit, stand, walk, or reach occasionally and lift and carry objects of up to 10 pounds occasionally.  (Id. at 1383.)  Dr. Murphy stated on his questionnaire that "Patient is permanently disabled from all employment."  (Id. at 1384.)

In addition, as discussed previously, Dr. Frey wrote Plaintiff notes stating that he was unable to return to work on April 18, 2003 and May 20, 2003.  (Defs. Ex. F, G.)  Moreover, Dr. Murphy examined Plaintiff on September 11, 2003, and reported that he was disabled from all employment

with a poor prognosis for full recovery.  (Pl. Ex. B at 23-25.)  Dr. Murphy maintained that finding in follow-up reports after examinations of Plaintiff on October 2 and 15, 2003, November 13, 2003, December 18, 2003, and January 22, 2004.  (Id. at 6, 8, 14, 20, 1078.)  His opinion as to Plaintiff's disability was unchanged after an examination on February 19, 2004.  (Id. at 1077.)  Dr. Murphy examined Plaintiff again on March 25, 2004 and found that he remained "disabled from all employment until further notice."  (Id. at 1076.)  Dr. Murphy found that Plaintiff's disability status continued, unchanged, after examinations on June 3, 2004, July 1, 2004, July 29, 2004, and August 26, 2004.  (Id. at 1070-72, 1074.)  Dr. Murphy examined Plaintiff again on September 24, 2004 and reported that his disability status was unchanged and that "[h]is prognosis for full recovery and return to gainful employment is poor."  (Id. at 1069.)  After examining Plaintiff on October 21, 2004, Dr. Murphy reported his opinion that Plaintiff "is totally and permanently disabled from all employment."  (Id. at 1068.)  Dr. Murphy examined Plaintiff on November 18, 2004 and December 27, 2004 and found that he remained disabled from all employment.  (Id. at 1066-67.)  Dr. Murphy's examination reports dated January 21, 2005, February 22, 2005, March 22, 2005, and April 25, 2005, all repeat that finding.  (Id. at 1062-65.)  Dr. Murphy again reported that Plaintiff remained disabled from all employment after examining him on May 24, 2005, and opined that "[t]his disability is permanent."  (Id. at 1061.)  Dr. Murphy repeated that finding after examining Plaintiff on June 23, 2005 and July 20, 2005 (Id. at 1059-60.)  Dr. Murphy again reported that Plaintiff remained disabled from all employment after examining Plaintiff on August 16, 2005 and September 12, 2005, and maintained that finding following examinations of Plaintiff on October 13, 2005, and November 8, 2005.  (Id. at 1055-58.)

We find that there is some evidence on the record of this Motion that supports Defendants'

23

claim that Plaintiff was capable of performing the principal physical requirements of his job following his January 30, 2003 injury.  We further find that Plaintiff submitted medical records to LINA that support his claim that he was not physically capable of performing the principal physical requirements of his job following his January 30, 2003 injury.  We conclude, accordingly, that there is a genuine issue of material fact regarding whether Plaintiff was disabled as defined by the Policy following the January 30, 2003 incident.  Defendants' Motion for Summary Judgment is, therefore, denied as to their argument that Plaintiff failed to establish that he was unable to "perform all the material duties of his or her regular occupation" as required by the Policy.

4.    Pre-existing condition

Defendants further contend that they are entitled to the entry of summary judgment in their favor because Plaintiff's disability resulted from a pre-existing condition that is not covered by the Policy.  The Policy contains the following Pre-Existing Condition Limitation:

> The Insurance Company will not pay Disability Benefits for any period of Disability caused by or contributed to by, or resulting from, a Pre-Existing Condition.  A "pre-existing condition" means any Injury or Sickness for which the Employee received medical advice or treatment within 3 months before his or her most recent effective date of insurance.

> The Pre-Existing Condition Limitation will apply to any added benefits or increases in benefits.  It will not apply to a period of Disability that begins after an Employee has been insured for 12 months under the Policy and the period of Disability begins at least 12 months after his or her most recent effective date of insurance or the effective date of any added or increased benefits.

(Policy at 9.)  Plaintiff's effective date of insurance was September 24, 2001, the date he began his employment with PFT.  (Policy at 4, 7; Defs. Ex. A at 1.)  Defendants maintain that Plaintiff is not entitled to LTD benefits because he was treated for his pre-existing back condition during the three

24

months prior to the commencement of his employment.

There is evidence on the record of this Motion that Plaintiff had a pre-existing back injury that caused pain in his back and legs prior to his employment with PFT.  Plaintiff suffered a back injury on September 9, 1999 when he was moving a wooden pallet while working as a store manager for Eckerd Drugs. (Pl. Ex. B at 982, 1266.)  A January 7, 2000 MRI revealed a small left lateral disc herniation at the L3-4 level that effaced the left L3 nerve root lateral to the foramen and within the foramen.  (Id. at 138, 1363.)  He received medical treatment for his injury and was doing well until he was involved in a car accident on April 2, 2000.  (Id. at 1250.)  His back pain increased after this accident and his pain spread to his legs.  (Id. at 1250, 1266-67.)  A CT scan performed on August 8, 2000 showed a left far lateral disc herniation displacing the exiting nerve root at L3-4 and a broad based disc protrusion at L4-5.  (Id. at 1268.)  There is also evidence on the record that Plaintiff was treated for this back injury by Dr. Albert of the Rothman Institute between February 2000 and October 2001 and by Dr. Mitchell Freedman of the Rothman Institute between March 2000 and July 11, 2001 (Dr. Freedman prescribed neurontin for Plaintiff's back condition on June 20, 2001 and July 16, 2001).  (Defs. Exs. J, K.)  There is also evidence that Plaintiff received pain management treatment at the Jefferson Hospital Pain Center, including biofeedback, between March 11, 2001 and August 29, 2001.  (Defs. Ex. K.)  We find, accordingly, that there is evidence on the record of this Motion that Plaintiff received treatment for his pre-existing back condition within the three months immediately prior to the effective date of his insurance under the Policy.

Plaintiff's application for LTD benefits arises, however, from a period of disability that began on January 30, 2003, sixteen months after his effective date of insurance.  (Defs. Ex. D.)  The Policy's Pre-Existing Condition Limitation does not apply to "a period of Disability that begins after

an Employee has been insured for 12 months under the Policy." (Policy at 9.) We conclude, accordingly, that the Policy's Pre-Existing Condition Limitation does not apply to Plaintiff's injuries resulting from the January 30, 2003 incident. Defendants' Motion for Summary Judgment is, consequently, denied as to their argument that Plaintiff's disability resulted from a pre-existing condition that falls within the Pre-Existing Condition Limitation of the Policy.

**IV.    CONCLUSIONS**

For the reasons stated above, Defendants' Motion for Summary Judgment is denied. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.